UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:20-CV-00090-GNS

JANET S. WELLS; and
MARVIN WAYNE WELLS, JR.                                                                    PLAINTIFFS

v.

BOSTON SCIENTIFIC CORPORATION                                                       DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment (DN 29). The motion is ripe for adjudication. For the reasons stated below, the motion is **DENIED**.

### I.  STATEMENT OF FACTS AND CLAIMS

This action arises out of a products liability action filed by Plaintiffs Janet S. Wells ("Janet") and Marvin Wayne Wells, Jr. ("Marvin") regarding a polypropylene mesh to treat urinary tract incontinence (the "Prefyx PPS System") manufactured by Defendant Boston Scientific Corporation ("Boston Scientific"). (Pls.' Short Form Compl. 1).

Janet struggled with urinary incontinence for 15 years prior to 2008 when Dr. Kristin Dobay ("Dr. Dobay") implanted Janet with the Prefyx PPS System. (Def.'s Mot. Summ. J. Ex. A, at 12, DN 29-1; Def.'s Mot. Summ. J. Ex. B, at 4-5, DN 29-2). Following the surgery, Janet's condition improved for a time, but in 2010 she returned to Dr. Dobay's office because the mesh was not working: Janet's urethra was "hypermobile", and she was experiencing "a lot of leaking." (Def.'s Mot. Summ. J. Ex. B, at 25-28). Janet continued to have urinary incontinence

1

for the next three years though she did not receive medical treatment during this time. (Def.'s Mot. Summ. J. Ex. B, at 30).

Between 2010 and 2013, Janet's symptoms intensified; she still had urinary incontinence, was limited in her ability to do household chores, could not walk at a normal pace, and sexual intercourse was painful for her. (Def.'s Mot. Summ. J. Ex. A, at 12, DN 29-1). According to Janet, she became unable to exercise normally in 2012. (Def.'s Mot. Summ. J. 11). Janet contends that she "connect[ed] all the dots" between her symptoms and the mesh surgery in 2013, which was five years after the surgery. (Pls.' Resp. Def.'s Mot. Summ. J. 3, DN 30).

On October 2, 2013, Plaintiffs filed this action asserting claims for negligence, strict liability, breach of warranty, loss of consortium, and fraudulent concealment.[1] (Pls.' Short Form Compl. 4-5). Boston Scientific has moved for summary judgment on the basis that Plaintiffs' product liability claims are barred by the applicable statute of limitations. (Def.'s Mot. Summ. J. 8-12).

## II.     JURISDICTION

The Court has diversity jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332.

## III.    STANDARD OF REVIEW

In ruling on a motion for summary judgment, the Court must determine whether there is any genuine issue of material fact that would preclude entry of judgment for the moving party as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of stating the basis for the motion and identifying evidence in the record that demonstrates an absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the

---

[1] This case was transferred from the Southern District of West Virginia on May 14, 2020. (DN 1).

2

moving party satisfies its burden, the non-moving party must then produce specific evidence proving the existence of a genuine dispute of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

While the Court must view the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show the existence of some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted). Rather, the non-moving party must present specific facts proving that a genuine factual dispute exists by "citing to particular parts of the materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient" to overcome summary judgment. *Anderson*, 477 U.S. at 252.

## IV. DISCUSSION

Under Kentucky law,[2] an action for personal injury to a plaintiff or her spouse must be brought within one year after the cause of action accrued. KRS 413.140(1)(a). When the injury is not immediately apparent, an action accrues when plaintiff "knew or should have known that [she] had been injured by the conduct of the tortfeasor." *Louisville Tr. Co. v. Johns-Manville Prods. Corp.*, 580 S.W.2d 497, 500 (Ky. 1979); *Michals v. Baxter Healthcare Corp.*, 289 F.3d 402, 406 (6th Cir. 2002). This "discovery rule" was first articulated in *Tomlinson v. Siehl*, 459

---

[2] "In federal diversity actions, state law governs substantive issues. . . ." *Legg v. Chopra*, 286 F.3d 286, 289 (6th Cir. 2002) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). Because the parties do not appear to dispute that applicable state law applies to Plaintiffs' claims, the Court will apply Kentucky law. *See Raheel Foods, LLC v. Yum! Brands, Inc.*, No. 3:16-CV-00451-GNS, 2017 WL 217751, at *3 (W.D. Ky. Jan. 18, 2017) ("When parties acquiesce to the application of a particular state's law, courts need not address choice of law questions." (citing *In re Korean Air Lines Disaster*, 932 F.2d 1475, 1495 (D.C. Cir. 1991))).

3

S.W.2d 166 (Ky. 1970), where the court stated that "the statute begins to run on the date of the discovery of the injury, or from the date it should, in the exercise of ordinary care and diligence, have been discovered" in the context of a medical malpractice case. *Hackworth v. Hart*, 474 S.W.2d 377, 379 (Ky. 1971). Years later, the Kentucky Supreme Court extended the *Tomlinson* discovery rule to cases brought under a theory of negligence or product liability. *Louisville Tr. Co.*, 580 S.W.2d at 501. Today, the discovery rule is a two-prong test: "a cause of action will not accrue until the plaintiff [1] discovers, or in the exercise of reasonable diligence should have discovered, not only that he has been injured but also [2] that his injury may have been caused by the defendant's conduct." *Hazel v. Gen. Motors Corp.*, 863 F. Supp. 435, 438 (W.D. Ky. 1994) (citations omitted).

The date of injury is the critical analysis, whereas the date harm is discovered does not trigger the statute of limitations. *Michals*, 289 F.3d at 406-07 ("The court distinguished between the time the plaintiff discovered "harm" and the time plaintiff discovered "injury" as being critical to the application of the discovery rule." (citation omitted)). The Sixth Circuit illustrated this difference with an example: "'[h]arm could result from a successful operation where a communicated, calculated risk simply turns out poorly for the patient, although the medical treatment met the highest standards[;]' however, despite the existence of the 'harm,' there would be no injury in such case." *Id.* (alternations in original) (citing *Wiseman v. Alliant Hosps., Inc.*, 37 S.W.3d 709, 712 (Ky. 2001)).

In the present action, there is a genuine issue of material fact as to when Janet's injury accrued. Her injury was not immediately apparent; in fact, Janet's urinary incontinence improved for a while post-surgery. (Def.'s Mot. Summ. J. Ex. B, at 25). Therefore, the "discovery rule" is applicable. *See Louisville Tr. Co.*, 580 S.W.2d at 500. It is unclear when

4

Janet knew or should have known of her injury from the mesh implant. *See id.* Janet returned to Dr. Dobay's office on January 5, 2010, two years after the 2008 surgery, because the mesh implant was no longer working, her stress incontinence had returned, and she was experiencing leakage. (Def.'s Mot. Summ. J. Ex. B, at 27-28). Defendant claims that at this point Janet knew she had suffered an injury and knew the injury might have been caused by the mesh implant. (Def.'s Mot. Summ. J. 11).

Viewing the facts most favorably to the non-moving party, as the Court must do in ruling on a motion for summary judgment, Janet may have known only that her incontinence had returned—not necessarily that she had been injured. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586; (*See* Def.'s Mot. Summ. J. Ex. B, at 31-32). Knowledge that the incontinence had returned was not an injury but was most likely a discovered harm. Dr. Dobay and Janet discussed whether the procedure would work, and she stated they were hopeful it would work. (Def.'s Mot. Summ. J. Ex. B, at 24). This is analogous to the example in *Michals* where the calculable risk from the surgery was clear, and the fact that the surgery did not improve the patient's condition did not give rise to an inference of injury. *See Michals*, 289 F.3d at 407.

Janet also suffered more harm following her surgery. After the implant her urinary incontinence returned, and Janet was impaired in ways she was not before: her ability to do household chores like cooking and baking was limited, she could not walk at a normal pace, and sexual intercourse was painful. (Def.'s Mot. Summ. J. Ex. A, at 12). Janet stated these symptoms began to increase and she lost her ability to exercise daily in early 2012. (Def.'s Mot. Summ. J. 11).

The statute of limitations may not have begun to run at that point to the extent Janet did not have reason to believe her injuries were the result of Defendant's conduct. *See Hazel*, 863 F.

5

Supp. at 438.  While Janet had surgery in 2008, her limited ability to walk, do chores, and have sexual intercourse did not overtly manifest until 2012.  (Def.'s Mot. Summ. J. 11; Def.'s Mot. Summ. J. Ex. A, at 12).  Janet does not have medical training, and there was no reason for her to link her worsened condition to the mesh implant in 2008.  Janet had health problems throughout her adult life before 2008, and she had severe incontinence for 15 years before her surgery. (Def.'s Mot. Summ. J. Ex. A, at 12).  The amount of time that has passed, coupled with Janet's long history of health issues, leaves a reasonable question as to whether she should have immediately deduced her injuries were a result of the surgery.

Janet asserts she did not "connect the dots" from her numerous symptoms to the mesh implant until 2013, and this is within the statute of limitations.  (*See* Pls.' Resp. Def.'s Mot. Summ. J. 3).  Under this evidence, there is a significant question regarding when Janet knew or should have known that her increased symptoms post-surgery were caused by the defective product manufactured by Boston Scientific.  Accordingly, Defendant's motion will be denied.

## V.     CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (DN 29) is **DENIED**.

Greg N. Stivers, Chief Judge
United States District Court

October 19, 2020

cc:     counsel of record